**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**UNITED STATES OF AMERICA,**

               **Plaintiff - Appellee,**

                                   **Case Nos.**   **3:04cr24/RV**
                                                 **3:04cr25/RV**

**vs.**

**CHRISTOPHER COLLINS,**

               **Defendant - Appellant.**

_____/

**ORDER**

      Pending is the appellant's appeal of his two misdemeanor convictions in the Magistrate Court.  (Doc. 11).[1]

      On November 17, 2003, the appellant Christopher S. Collins appeared before Magistrate Judge M. Casey Rodgers and pled guilty to two separate counts of Knowingly Driving While License Suspended in violation of Title 36, Code of Federal Regulations, Section 4.2(b) and Section 322.34(2) of the Florida Statutes. Following Judge Rodgers' elevation to District Court Judge, the appellant was sentenced by Magistrate Judge Miles Davis to one year's imprisonment, which represents the maximum six (6) months imprisonment on each count, to be served consecutively.  On April 20, 2004, the appellant appealed the sentence of the Magistrate Judge, alleging that his sentence should be reduced or the appellant should be allowed to withdraw his guilty plea because his plea colloquy did not comply with the core requirements of Rule 11, Federal Rules of Criminal Procedure.

---

[1] The appellant pled guilty to two separate cases before the Magistrate Court.   For purposes of this appeal, these cases have been consolidated.

Due to an error in the clerk's office, this court did not receive notice of this appeal until February 8, 2005.  The appellant has since completed his term of imprisonment.  Thus, the appellant's appeal for a reduction in sentence is moot.  However, in the interest of justice and fairness to the appellant, this court will proceed to address the merits of this appeal.

## II.    FACTUAL BACKGROUND

The record reflects the following facts.  On August 2, 2003, the appellant Christopher Collins was issued traffic violation notices while he was driving in Gulf Islands National Seashore in Escambia County, Florida.   On August 29, 2003, the appellant was again issued a traffic offense violation notice while driving on Gulf Islands National Seashore.    Appellant was subsequently charged by information with three counts pertaining to the traffic offenses committed on August 2, 2003.[2] This indictment, contained in Magistrate Court Case No. 3:03m283-MD, charged the appellant with driving with a suspended license ("DWLS"), speeding, and failing to provide proof of insurance.  One month after the first information was filed, the appellant was charged in a separate one-count information regarding the August 29, 2003 violation.  The second information, contained in Magistrate Court Case No. 3:03m308-MCR, charged one count of DWLS.

On September 17, 2003, and October 15, 2003, the appellant had an initial appearance in his two cases, respectively.  During both initial appearances, the Magistrate Judge informed the appellant of his rights, including his right to a court-appointed attorney if he could not afford one.   Additionally, during his initial appearance for his second case, the appellant was advised of numerous rights he would waive if he pled guilty, including his right to cross-examine witnesses,

---

[2] These traffic violations are governed by federal law which makes it a federal crime to violate a state traffic law while on the premises of a national park, such as Gulf Island National Sea Shore.  36 C.F.R. §4.2(b).

present evidence, and compel the attendance of witnesses.  In both cases, the appellant executed a financial affidavit in support of his request that the Magistrate Judge appoint him counsel, and the Office of the Federal Public Defender was appointed to represent the appellant.

On November 17, 2003, the appellant's plea colloquy for both cases was combined.  The appellant appeared with his appointed counsel and pled guilty to Count One of the  indictment in Case No. 3:03mj283/MCR, charging DWLS, and to Count One of the indictment in Case No. 3:03mj308/MD, charging DWLS.   At the beginning of the plea colloquy, the appellant's attorney informed the Magistrate Judge that he had explained the charges in both cases to the appellant, and the appellant intended to plead guilty to the DWLS count in the first indictment, and the DWLS count in the second indictment.  In return, the government would move to dismiss Counts Two and Three of the first indictment.   The  Magistrate Judge explained that it was her understanding that the government would move to dismiss two counts in the first indictment upon the appellant's plea of guilty to one count in the indictment.  The Magistrate Judge then confirmed with the appellant, "Is that your understanding as to what will occur?"  The appellant answered in the affirmative.

Next, the Magistrate Judge directed the prosecutor to state the maximum possible penalties that the appellant faced in connection with the two charges. The following exchange took place:

Mr. Roberts (Prosecutor):  Your honor, in case number one, the maximum possible penalty is up to six months imprisonment, a fine of up to $5,000, and a $10 special monetary assessment.   In the state of Florida, these are convictions – any prior convictions were out of state – the maximum penalty would be first

offense, and the maximum penalty would be up to 60 days imprisonment and a fine of $500.

In case number two, the maximum penalty would, again, be six months, $5,000, and a $10 special monetary assessment; but the penalty in the state of Florida, if he pleads guilty to the first offense, it would be up to a year imprisonment and a fine of up to $1,000."

Mr. Keith (Defense Attorney):   "That's a little confusing. And, of course, I have explained to Mr. Collins that six months is the maximum sentence on each count.  I'm not sure how it would work in the state of Florida with these two at basically the same time being entered, pleas being entered at the same time; but I've told him six months is the maximum on each count under the Code of Federal Regulations."

The Court:  Mr. Collins, do you understand that you do face jail time potentially on these charges?

The Defendant:  Yes, ma'am, six months on each one at maximum.

The Court:  All right. Lieutenant Roberts, what is your position – the government's position as far as the penalties?  It sounds like it's different from what Mr. Keith has indicated.

Mr. Roberts:  Well, Your Honor, the penalty in each cases is obviously six months, $5,000, because it's a motor vehicle offense, if it had happened in the state of Florida.  He has out-of-state priors, but

because they are out of state, they can't be used to enhance the penalty under 322.34.   But because he got an in-state conviction or he would have an in-state conviction if he pleads guilty to the first one, the second, he drove in the park again on August 29th, he would have a prior at the time he pleads guilty to that offense, which would, under Florida law, would increase it from a Class A misdemeanor.

The Court:   But are we proceeding under CFR or under –

Mr. Roberts: Yes, ma'am.

The Court:   So it's six months?

Mr. Roberts: Yes, ma'am.

The Court:   All right.

Following this discussion, the Magistrate Judge explained to the appellant that she needed "to ensure that your decision to enter a plea of guilty is knowingly and voluntarily made, and that you've made that decision with the full appreciation of the consequences of doing so.   Mr. Collins, you do understand the maximum possible penalties that you face in connection with these charges. I do make that finding at this time."   Further, the  Magistrate Judge ascertained that the appellant had not used narcotics or alcohol in the last 24 hours, and informed the appellant of certain rights he would be waiving if he pleaded guilty.   Specifically, the Magistrate Judge advised the appellant that he was presumed innocent of the charges; he was free to maintain a not guilty plea; and if he did maintain a not guilty plea, he would be entitled to a trial in his case.   She informed the appellant that if he pled guilty, he would waive his right to a trial as well as any and all defenses he would otherwise have to both charges.   The appellant confirmed that he understood these rights.   The Magistrate Judge went on to inform the appellant that if he persisted in a not guilty plea and continued to trial, he would have the

right to cross-examine the government's witnesses, he would have the right to require people to appear in court and testify on his behalf, and he could compel them to be in court by way of a subpoena.  Again, the appellant confirmed that he understood that by entering a guilty plea he would be waiving these rights as well. Still, the  Magistrate Judge continued, and informed the appellant, "You'll also be giving up your right to deny your guilt.  Once you enter a guilty plea, you'll be deemed guilty of these offenses for all intent and purposes.  You cannot later change your mind and withdraw your plea, even if you don't like the sentence that the court imposes.  Do you understand that?"  The appellant affirmed that he did understand.  The Magistrate Judge asked the appellant if he had any questions about his rights, and the appellant stated, "No, ma'am."  The Magistrate Judge asked the appellant whether he wished to speak with his defense attorney any further, and the appellant stated that he did not.

At the court's direction, the prosecutor provided a separate factual basis for each of the appellant's two cases, and the appellant agreed that except for one immaterial point, each factual basis was correct.  Accordingly, the appellant pled guilty to each of the two DWLS counts and the Magistrate Judge accepted the appellant's pleas.  At no time during the plea colloquy did the appellant object to any of the Magistrate Judge's findings, nor did he make any objection to the Rule 11 plea colloquy as a whole.

On February 4, 2004, the appellant's cases were again combined for purposes of the sentencing hearing.  At the sentencing hearing, the appellant did not raise any objection to the Magistrate Judge's plea colloquy or to the pre-sentence investigation report.  The  Magistrate Judge sentenced the appellant to a total of one year imprisonment, representing the maximum six months incarceration on each count, to be served consecutively, as well as a $20 special monetary assessment.   The appellant did not object to anything at the sentencing hearing.

On February 13, 2004, the appellant filed a notice of appeal in both cases contending that the court's plea colloquy violated Rule 11, and he was entitled to either a reduction in his sentence or the opportunity to withdraw his guilty plea.  As stated above, due to an error in the clerk's office, this court was not notified of the appeal until February 5, 2005.  Since the appellant's appeal, he has served his sentence in both of these cases.

## II.   DISCUSSION

### A.   Standard of Review

Where a defendant did not object to a  judge's failure to comply with Rule 11, Federal Rule of Criminal Procedure, the reviewing court on appeal reviews any alleged failure for plain error.  United States v. Vonn, 535 U.S. 55, 58-59, 122 S. Ct. 1043, 1046, 152 L. Ed. 2d 90 (2002); United States v. Monroe, 353 F.3d 1346, 1349 (11th Cir. 2003).  To establish plain error, a defendant must show that there is (1) "error" (2) that is "plain" and (3) that "affects substantial rights." United States v. Lejarde-Rada, 319 F.3d 1288, 1290 (11th Cir. 2003).  "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error(s) 'seriously affect(s) the fairness, integrity, or public reputation of judicial proceedings.' " Id. (quoting Johnson v. United States, 520 U.S. 461, 467, 117 S. Ct. 1544, 1549, 137 L. Ed. 2d 718 (1997)). Further, the Supreme Court of the United States has recently held that in order for a defendant to establish that his substantial rights were affected, the defendant must show "a reasonable probability that, but for the error, he would not have entered the plea" or that "the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding."   United States v. Dominguez Benitez, 542 U.S. 74, 124 S. Ct. 2333, 2340, 159 L. Ed. 2d 157 (2004).

Under plain error review, the silent defendant has the burden to show that all

of the requirements to establish plain error have been met.  <u>Vonn</u>, <u>supra</u>, 535 U.S. at 59, 122 S. Ct. at 1046.   Further, "in the Rule 11 context, 'the reviewing court may consult the whole record when considering the effect of any error on substantial rights.' " <u>Id.</u>

It is well established that there is no per se rule of reversal simply because a defendant has shown a Rule 11 error occurred during the plea colloquy. <u>Dominguez Benitez</u>, <u>supra</u>, 542 U.S. 74, 124 S. Ct. at 2333; <u>Monroe</u>, <u>supra</u>, 353 F.3d at 1354.  Instead, under a plain error review, the reviewing court determines whether the plea colloquy addressed three core concerns: "(1) ensuring that the guilty plea is free from coercion; (2) ensuring that the defendant understands the nature of the charges against him; and (3) ensuring that the defendant is aware of the direct consequences of his guilty plea." <u>Monroe</u>, <u>supra</u>, 353 F.3d at 1354; <u>Lejarde-Rada</u>, <u>supra</u>, 319 F.3d at 1289.   Generally, a reviewing court will uphold a plea colloquy that technically violates Rule 11, but adequately addresses these three core concerns.  <u>United States v. Hernandez-Fraire</u>, 208 F.3d 945, 950 (11th Cir. 2000). In other words, a court need not "read the specified items in *haec verba*  . . . Instead, in Rule 11 proceedings, matter of substance, not form, are controlling." <u>Monroe</u>, <u>supra</u>, 353 F.3d at 1351.

Moreover, the Eleventh Circuit has indicated that the plea colloquy would have to totally or almost totally fail to address one of these concerns before a Rule 11 error will be found to have substantially affected or prejudiced the defendant. <u>Id.</u> at 1355.  One of the underlying concerns for the heavy burden placed on a silent defendant is the realization that a defendant

> "could choose to say nothing about a judge's lapse under Rule 11 until the moment of taking a direct appeal, at which time [absent plain error review] the burden would always fall on the Government to prove harmlessness. A defendant could simply relax and wait to see if the sentence later struck him as satisfactory; if not, his Rule 11 silence would have left him with clear but uncorrected Rule 11 error to place

on the Government's shoulders."

Vonn, supra, 535 U.S. at 73, 122 S. Ct. at 1054.

       B.      Alleged Rule 11 Errors

       The appellant contends that because of errors contained in the plea colloquy, the  Magistrate Judge did not address the first core concern, i.e. ensuring his plea was voluntary, or the third core concern, i.e. ensuring he was aware of the direct consequences of his guilty plea.  Each of the alleged errors will be discussed within the context of the Rule 11 core concern in which they relate.

       **1.      Ensuring the plea was free of coercion**

       The appellant first contends that the  Magistrate Judge did not address the first core concern - - - ensuring that the plea was voluntary.  Rule 11(b)(2) directs, "Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement)." Fed. R. Crim. P. 11(b)(2).   With respect to the promises made to the appellant regarding his guilty plea, the Magistrate Judge explained that it was the court's understanding that the government would move to dismiss two of the counts in the first indictment upon the appellant's plea of guilty to one count in the first indictment.  The Magistrate Judge then confirmed with the appellant, "Is that your understanding as to what will occur?"   The appellant answered in the affirmative.  Thus, while the Magistrate Judge did not specifically ask the appellant whether he relied on any other promises by the government in making his guilty plea, she did ensure that promises recited during the plea colloquy were consistent with the appellant's understanding.

       However, Rule 11 expressly provides that a court must ensure that a plea is not the result of force or threats.  The Magistrate Judge did not ask the appellant whether his guilty  plea was coerced by force or threats.  Thus, the  Magistrate

Judge violated the letter of  Rule 11.   Nevertheless, the appellant has failed to establish a reasonable probability that, but for the Rule 11 error, he would not have entered a guilty plea.  <u>See</u> <u>Dominguez Benitez</u>, <u>supra</u>, 124 St. Ct. at 2340.   On appeal, the appellant does not contend that his guilty plea was the result of coercion or force.   The plaintiff does not argue that his guilty plea was anything other than voluntary.   Therefore, the appellant has failed to show that he was prejudiced by the Magistrate Judge's failure to ensure that his guilty plea was free from coercion.

> **2.    <u>Ensuring a defendant understands the direct consequences of his guilty plea</u>**

When discussing the maximum penalty, the Magistrate Judge informed the appellant that each count to which the appellant pleaded guilty carried a maximum sentence of six months.   However, on appeal, the  appellant contends that the "real maximum sentence" was one year because the court applied the sentences consecutively, and the appellant had no way of knowing that consecutive sentences was a possibility.   Therefore, the appellant argues, he did not understand the consequences of his guilty plea.

The appellant was charged in two separate cases, by two separate indictments, for conduct that took place on two separate dates.   The appellant pleaded guilty to one count in each indictment.   Although the appellant pled guilty to both cases during the same plea hearing, the Magistrate Judge ensured that each case was addressed separately.   For instance, before the prosecutor recited the factual basis for both charges, he asked the court whether he should read both sets of facts pertaining to the different charges at the same time.   The Magistrate Judge responded, "Well, they are separate occurrences, right?"   The prosecutor indicated affirmatively, and the Magistrate Judge stated, "Just one at a time then." The prosecutor then recited the facts pertaining to the first case, and the appellant

indicated that he understood that set of facts.  After the prosecutor proceeded to inform the appellant of the facts pertaining to the second case, the appellant indicated that he understood the second set of facts.

Moreover, the record indicates that the appellant was informed by the Magistrate Judge, the prosecutor, and his defense attorney that each separate count to which he pled guilty carried a six-month maximum sentence.  For instance, the prosecutor explained that in "case number one, the maximum possible penalty is up to six months imprisonment . . . " and then, "in case number two, the maximum possible penalty would, again, be six months . . . "  In response, the appellant acknowledged that he understood that he faced imprisonment of up to "six months on each one at maximum."

There is no reason, based on the whole record, to believe that the appellant did not understand that he was pleading guilty to two separate charges, and each charge carried a maximum penalty of six months.  Thus, with respect to a potential prison sentence totaling one year, the appellant was aware of the direct consequences of his guilty plea, and the appellant has failed to show that the Magistrate Judge erred in not specifically informing the appellant that his sentences in the two separate cases could run consecutively.

Furthermore, "A plain error is an error that is 'obvious' and is 'clear under current law.'" United States v. Humphrey, 164 F.3d 585 (11th Cir. 1999)(citing United States v. Olano, 507 U.S. 725, 731, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508 (1993).  "[A]t least where the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." Lejarde-Rada, supra, 319 F.3d at 1291.  Neither the Supreme Court of the United States nor the Eleventh Circuit have ever held that when a court informs the defendant of the maximum sentence as to each count, the court must also inform the defendant that

the sentences will be served consecutively.  See Humphrey, supra, 164 F.3d at 586-88.

Next, the appellant argues that the plea colloquy was insufficient because the Magistrate Judge failed to warn him that the government had the right to use any statement he gave under oath against him in a perjury or false statement trial. Rule 11 directs that a court must inform the defendant of "the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath.  Fed R. Crim. P. 11(b)(1)(A).  Here, the  Magistrate Judge did violate Rule 11 because the appellant was not placed under oath at the plea colloquy.

The Advisory Committee Notes for Rule 11 explain, ". . . the Committee thought it only fair that the defendant be warned that his plea of guilty (later withdrawn) or nolo contendere, or his offer of either plea, or his statements made in connection with such pleas or offers, could later be used against him in a perjury trial if made under oath, on the record, and in the presence of counsel." (emphasis added).

However, the decision of whether to place a defendant under oath at a plea colloquy is left up to the court.[3]  Rule 11 provides that at a plea colloquy "the defendant may be placed under oath."   Fed. R. Crim. P. 11(b)(1).   Here, the Magistrate Judge chose not to place the appellant under oath, and accordingly, the appellant's statements during the plea colloquy could not have been used against him in a subsequent perjury trial.  Therefore, the  Magistrate Judge did not commit any error, much less plain error, in failing to inform the appellant of the potential use of his statements against him in a subsequent trial.

---

[3]  Significantly, the Advisory Notes further explain, "The Committee does not intend its language to be construed as mandating or encouraging the swearing-in of the defendant during proceedings in connection with the disclosure and acceptance or rejection of a plea agreement."

Moreover, the Eleventh Circuit "has consistently held that a failure to warn [of the government's right in a perjury prosecution to use defendant's statements made under oath] is not a sufficient basis for attacking a plea absent a threat of prosecution for perjury or some other showing of prejudice." <u>United States v. Pinto</u>, 838 F.2d 1566, 1569 (11th Cir. 1988)(citing <u>United States v. Law</u>, 633 F.2d 1156, 1157 (5th Cir. Jan. 1981)). Here, the appellant has not been subjected to a subsequent perjury trial, and he has shown no prejudice as a result of his statements made during the plea colloquy.

The appellant also contends that the plea colloquy violated Rule 11 because the Magistrate Judge failed to advise the appellant of the mandatory nature of the $10 special monetary assessment on each charge.  The Magistrate Judge informed the appellant that he faced a $10 special assessment as to each count, but she did not inform the appellant that such special assessment was mandatory. Notwithstanding, where a Rule 11 error concerning a penalty is *de minimus* in nature, such an error does not constitute plain error. <u>United States v. Tyndale</u>, 209 F.3d 1292, 1295-96 (11th Cir. 2000).  Such *de minimus* errors do not have a material effect on a core concern of Rule 11.  <u>See</u> <u>e.g.</u>, Id. at 1295-96(holding that court's failure to inform the defendant of mandatory penalty of at least one day imprisonment does not constitute plain error); <u>United States v. Bejarno</u>, 249 F.3d 1304, 1306-07 (11th Cir. 2001)(failure to inform defendant of mandatory term of five years of supervised release does not constitute plain error).  Here, a $10 special assessment is *de minimus*, and the Magistrate Judge's failure to specifically inform the appellant that the penalty was mandatory did not materially affect a core concern of Rule 11.

Finally, the appellant contends that the plea colloquy violated Rule 11 because  the  Magistrate Judge did not inform the appellant of his right against compelled self-incrimination and his right to be represented by counsel at a trial

should he persist in his guilty plea.  Rule 11 directs that before accepting a plea, a court must inform the defendant of multiple rights, including "the right to a jury trial" and "the right to be represented by counsel - - - and if necessary have the court appoint counsel - - - at trial and at every other stage of the proceeding." Fed. R. Crim. P. 11(b)(1)(C) and (D).  The  Magistrate Judge failed to advise the appellant of these rights during the plea colloquy.  Of course, the appellant had already had counsel appointed, and was represented.

Therefore, the next consideration must be whether this omission resulted in the court's failure to address a core concern of Rule 11.  In United States v. Hernandez-Faire, supra, 208 F.3d 945, the Eleventh Circuit held that the district court's failure to inform the defendant of certain rights he was giving up by pleading guilty constituted a failure to ensure that the defendant understood the consequences of his guilty plea.  In that case, the district court did not inform the defendant of his right  to the assistance of counsel at trial, his right to confront and cross-examine adverse witnesses at trial, or his right against compelled self-incrimination.  Further, the district court failed to inform the defendant that he had a right to persist in a plea of not guilty.  In determining whether these Rule 11 errors substantially affected the defendant's understanding of the consequences of his guilty plea, the Eleventh Circuit emphasized that the defendant stated during the plea hearing, "I really don't know about this plea, because I don't understand what my rights are."  Id. at 951.  Based on all of these factors, the Eleventh Circuit held that the district court totally failed to ensure that the defendant was aware of the direct consequences of his guilty plea.  Id.  The Hernandez court noted that a defendant must know that he is giving up certain constitutional rights before he can understand the consequences of his plea.  Id.

By comparison, in United States v. Monroe, supra, 353 F.3d 1346, the Eleventh Circuit upheld a plea colloquy where the district court failed to inform the

defendant of his right against self-incrimination.  The Eleventh Circuit noted that while the district court did not inform the defendant of his right against self-incrimination, "the court's plea colloquy made it clear to Monroe that he had numerous rights and was waiving them by entering a guilty plea." Id. at 1356.  For instance, the district court in Monroe advised the defendant that "you don't have to plead guilty", and "you can continue in your plea of not guilty and go to trial." Id.  Thus, the Eleventh Circuit concluded that unlike the plea colloquy at issue in Hernandez, the district court in Monroe did not totally or almost totally fail to address a core concern under Rule 11 simply by failing to advise the defendant of his right against self-incrimination.  Id.

In this case, the  Magistrate Judge did not inform the appellant of his right against compelled self-incrimination or his right to be represented by counsel at a trial should he persist in his guilty plea.   However, unlike the district court in Hernandez, the  Magistrate Judge informed the appellant of his right to maintain his not guilty plea, and if he did persist in maintaining his not guilty plea, that he had a right to have a trial in the case.[4]   Further, the  Magistrate Judge informed the appellant that at the trial, he would have the right to cross-examine the government's witnesses, he would have the right to require people to testify on his behalf, and he could compel such witnesses by way of a subpoena.    Significantly, unlike the defendant in Hernandez, the appellant stated that he understood these rights.

Moreover, where a defendant has already received, and is receiving the subject right, there is no substantive reason to go through a meaningless exchange.  Collins had appointed counsel, and his attorney was standing in court with him.

---

[4] Originally, the appellant argued that the  Magistrate Judge violated Rule 11 by not informing him that he had a right to a jury trial.  The appellant now concedes that he was not entitled to a jury trial, as both of his charges carry a maximum penalty of  six months.

Rule 11 simply does not require a further advisement of his right to have counsel appointed.

Further, the appellant has not shown, or even argued, that he would not have pled guilty had he been more fully apprised of his listed right against self-incrimination or his right to representation at trial.

In sum, the appellant has failed to establish a reasonable probability that, but for any Rule 11 error committed by the Magistrate Judge during the plea colloquy, he would not have entered a guilty plea.  Therefore, the appellant has failed to carry its burden of showing that all of the requirements to establish plain error during his plea colloquy have been met.

**III.   CONCLUSION**

For the foregoing reasons, the appellant's conviction and sentence in both cases are AFFIRMED.

DONE AND ORDERED this 6th day of May, 2005.


/s/ *Roger Vinson*
**ROGER VINSON**
**Senior United States District Judge**